Parisi v. Goldman, Sachs & Co.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

August Term, 2012

(Argued: November 7, 2012                    Decided: March 21, 2013)

Docket No. 11-5229-cv

_____

LISA PARISI, SHANNA ORLICH, H. CHRISTINA CHEN-OSTER

*Plaintiffs-Appellees*,

v.

GOLDMAN, SACHS & CO., THE GOLDMAN SACHS GROUP,

*Defendants-Appellants*.

Before:  B.D. PARKER, RAGGI, LYNCH, *Circuit Judges*.

_____

Appeal from an order of the United States District Court for the Southern District of New York (Sand, *J.*) denying Defendants' motion to compel arbitration. The district court denied the motion because it believed that individual arbitration would preclude the Plaintiff from vindicating a right under Title VII to be free from a pattern or practice of discrimination.

**REVERSED**.

_____

ROBERT GIUFFRA, Theodore O. Rogers, Jr., Suhana S. Han, Sullivan & Cromwell, LLP, New York, NY; Zachary D. Fasman, Barbara B. Brown, Paul Hastings, LLP, New York, NY, *for Defendants-Appellants*.

F. PAUL BLAND, JR., Public Justice, Washington, D.C.; Adam T. Klein, Outten & Golden LLP, New York, NY; Paul W. Mollica, Outten & Golden, Chicago, IL; Kelly M. Dermody, Anne B. Shaver, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, *for Plaintiffs-Appellees*.

BARRINGTON D. PARKER, *Circuit Judge*:

Defendants-Appellants Goldman, Sachs & Co. and The Goldman Sachs Group ("Goldman Sachs") appeal from an order of the United States District Court for the Southern District of New York (Sand, *J.*) denying their motion to compel arbitration of Plaintiff-Appellee Lisa Parisi's claims of gender discrimination. Parisi, a former managing director, and two other former female employees, Shanna Orlich, an associate, and H. Christina Chen-Oster, a vice president, sued Goldman Sachs, individually and on behalf of a putative class, alleging that Goldman Sachs engaged in "a continuing pattern and practice of discrimination based on sex against female Managing Directors, Vice Presidents, and Associates with respect to compensation, business allocations, promotions, and other terms and conditions" of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.*

Parisi became a managing director in 2003 and was terminated in November 2008. On being promoted to managing director, she signed a Managing Director Agreement that contained an arbitration clause. The clause provides that

> any dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration in New York City before, and in accordance with the rules . . . of, the New York Stock Exchange, Inc. ("*NYSE*") or . . . the National Association of Securities Dealers ("*NASD*"). If both the NYSE and NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("*AAA*") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding . . . .

In the agreement, "employment related matters" are defined as "matters arising out of or relating to or concerning this Agreement, your hire by or employment with the Firm or the termination thereof, or otherwise concerning any rights, obligations or other aspects of your employment relationship in respect of the Firm."

In November 2010 Goldman Sachs moved, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, to enforce Parisi's arbitration agreement. Goldman Sachs contended that, in light of the Supreme Court's holding in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), that a party cannot be compelled to arbitrate on a class-wide basis where the relevant arbitration clause is silent as to the arbitration of class claims, Parisi's claims must be arbitrated individually. Parisi opposed individual arbitration on the grounds that, in signing her employment agreement, she did not understand it to require a ban on class claims, nor did she waive her substantive right to challenge systemic discrimination at Goldman Sachs.

In April 2011 the magistrate judge (Francis, *MJ.*), to whom the motion had been referred, denied the motion. He acknowledged that the arbitration clause in Parisi's employment agreement was fully valid, that it covered Parisi's employment discrimination claims and that it did not provide for arbitration on a class-wide basis. However, he also concluded that the agreement's preclusion of class arbitration would make it impossible for Parisi to arbitrate a Title VII pattern-or-practice claim, and that consequently, the clause effectively operated as a waiver of a substantive right under Title VII. *See Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.*), 667 F.3d 204, 219 (2d Cir. 2012). Goldman Sachs objected to the district court, which adopted the magistrate judge's recommendations and denied Goldman Sachs' motion to compel arbitration. This appeal followed. Because we disagree that a substantive statutory right to pursue a pattern-or-practice claim exists, we reverse.

## DISCUSSION

The FAA authorizes interlocutory appeals from a district court's denial of a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(A)-(B). We review *de novo* a district court's refusal to

compel arbitration. *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). We also review *de novo* the district court's ruling that Parisi has a substantive right to bring a Title VII class action utilizing the pattern-or-practice method of proof. *See United States v. Lyttle*, 667 F.3d 220, 223 (2d Cir. 2012) (holding that we review a district court's interpretation of a statute *de novo*).

**I.**

There is no dispute that the agreement promoting Parisi to managing director contains a broad arbitration clause that covers her Title VII claims. Since her claim is a statutory claim, we must next consider whether or not Congress intended for the claim to be arbitrated, or whether the district court was correct that arbitration was barred because it effectively precluded Parisi's Title VII claim. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 1994) (holding that a court considering a motion to compel arbitration of statutory claims must consider whether Congress intended those claims to be nonarbitrable).

Parisi contends that she has a substantive right under Title VII to pursue a pattern-or-practice claim, which is available only to class plaintiffs. She argues that because she cannot proceed on a class-wide basis in arbitration without Goldman's agreement, she must be permitted to proceed in court as a class plaintiff. In other words, she contends that the arbitration clause in her agreement must be invalidated because arbitration would preclude her from vindicating a statutory right. Goldman Sachs, on the other hand, contends that there is no substantive statutory right to pursue a pattern-or-practice claim. We agree with Goldman Sachs.

The Supreme Court has consistently interpreted the FAA as establishing a "federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (internal quotation marks omitted); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740,

4

1746 (2011); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." *CompuCredit*, 132 S. Ct. at 669 (internal quotation marks omitted)*; see also Gilmer*, 500 U.S. at 26. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1995). Moreover, even claims arising under a statute designed to further important social policies may be arbitrated because "*so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum*, the statute will continue to serve both its remedial and deterrent function." *Gilmer*, 500 U.S. at 28 (emphasis added).

In line with *Mitsubishi*, this Court and other Circuit courts have found two circumstances in which motions to compel arbitration must be denied because arbitration would prevent plaintiffs from vindicating their statutory rights. First, in *In re American Express Merchants' Litigation*, this Court held that an arbitration agreement was unenforceable because it contained a class waiver forcing Plaintiff merchants into individual arbitration of Sherman Act claims. 667 F.3d at 219. We concluded that given the complexities of antitrust litigation, individual arbitration would render the costs associated with these actions prohibitive and would effectively preclude plaintiffs from bringing such claims. *Id*.

Second, a number of Circuits have altered or invalidated arbitration agreements where they interfered with the recovery of statutorily authorized damages. *See*, *e.g.*, *Kristian v. Comcast*

5

*Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (severing as unenforceable a provision of an arbitration agreement limiting availability of treble damages under the Sherman Act); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003) (severing a restriction on available remedies from an arbitration agreement after finding that a "ban on punitive and exemplary damages is unenforceable in a Title VII case"); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute . . . the arbitration clause is not enforceable" and that the language insulating an employer from damages and equitable relief renders the clause unenforceable).

Parisi asserts Title VII claims and, as a general matter, "[c]ourts have consistently found that such claims can be subject to mandatory arbitration." *Ragone v. Atl. Video*, 595 F.3d 115, 120 (2d Cir. 2010). Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the "use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991). Moreover, Parisi does not claim that prohibitive costs of individual arbitration would effectively prevent her from bringing her Title VII claims, nor does she claim that arbitration would interfere with her access to statutorily authorized damages.

Instead, Parisi contends, and the district court agreed, that individual arbitration would preclude her from vindicating her right to bring a substantive "pattern-or-practice" claim under Title VII. But such a right does not exist. In *Chin v. Port Authority of New York*, 685 F.3d 135 (2d Cir. 2012), we concluded that in Title VII jurisprudence "pattern-or-practice" simply refers to a method of proof and does not constitute a "freestanding cause of action." 685 F.3d at 148, n.8. In so doing,

6

we joined the Fifth Circuit which reached the same conclusion. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001) ("A pattern or practice case is not a separate and free-standing cause of action . . . but is really merely another method by which disparate treatment can be shown"). Our conclusion was based on the Supreme Court's observation in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 343 (1977), that references to "pattern-or-practice" in the statute do not confer a particular right *per se*—rather they enable the government to enforce Title VII on behalf of groups of employees by alleging a "regular procedure or policy" of unlawful employment discrimination under § 2000e-2. 431 U.S. at 360. Moreover, we also recognized that the pattern-or-practice method of proof had, in the past, been viewed as "no more than an application of the *McDonnell Douglas* "burden-shifting framework" to claims brought either by the government on behalf of a group of employees or by class plaintiffs. 685 F.3d at 147-148.

Parisi recognizes that non-government plaintiffs can use the pattern-or-practice method only in class actions and argues that she is therefore entitled to pursue a class action in court. This logic is flawed. The availability of the class action Rule 23 mechanism *presupposes* the existence of a claim; Rule 23 cannot create a non-waivable, substantive right to bring such a claim. *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (holding that the Rules Enabling Act precludes Rule 23 from abridging, enlarging or modifying any substantive right). "[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). Since private plaintiffs do not have a right to bring a pattern-or-practice claim of discrimination, there can be no entitlement to the ancillary class action procedural mechanism.

Finally, in order to obtain relief on her claims, ultimately Parisi must prove to the arbitrators that Goldman Sachs discriminated against her on the basis of sex in violation of Title VII. The rules of the fora in which her claims may be arbitrated, the Financial Industry Regulatory Authority ("FINRA") and the American Arbitration Association ("AAA"), afford flexibility and informality to parties adducing relevant evidence. *See* FINRA Rule 13604; AAA Rule 30. Consequently, we have little difficulty in concluding, as Goldman Sachs concedes, that in proving her statutory claims, Parisi may offer to the arbitrators evidence of discriminatory patterns, practices or policies at Goldman Sachs that she contends affected her.

For the foregoing reasons, we see no reason to deviate from the liberal federal policy in favor of arbitration and conclude that the district court erred in denying the motion to compel arbitration.

**CONCLUSION**

We **reverse** the district court's ruling and remand for further proceedings consistent with this opinion.